IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:11-CT-3260-FL

| | |
|---|---|
| RANDLE PORTER COOKE, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| TRACY JOHNS, THOMAS KANE, ) | |
| DEBORAH GONZALES, and KAREN ) | |
| STEINOUR, ) | |
| ) | |
| Defendants. ) | |

This matter comes before the court on the motion to dismiss (DE # 13) pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by defendants Deborah Gonazlez ("Gonzales"), Tracy Johns ("Johns"), Thomas Kane ("Kane"), and Karen Steinour ("Steinour"), to which plaintiff responded. The issues raised are ripe for adjudication. For the following reasons, the court grants defendants' motion.

**BACKGROUND**

Plaintiff was a civil detainee confined in the Maryland unit at the Federal Correctional Complex in Butner, North Carolina ("Butner") awaiting a hearing on the government's petition for his commitment pursuant to 18 U.S.C. § 4248.[1] On December 12, 2011, plaintiff filed this action

---

[1] Title 18 U.S.C. § 4248 was enacted in July 2006 as part of the Adam Walsh Child Protection and Safety Act and provides for the civil commitment of "sexually dangerous person[s]" in federal custody for care and treatment, following the expiration of their federal prison sentences. 18 U.S.C. § 4248(a); see also Timms v. Johns, 627 F.3d 525, 526 (4th Cir. 2010).

pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), against Johns, Gonzales, Kane, and Steinour. Plaintiff asserts numerous violations of the Due Process Clause of the Fifth Amendment to the United States Constitution. Plaintiff's due process claims generally challenge the more restrictive conditions of his confinement, the commingling of civil detainees and sentenced inmates, the application of the BOP's policies and procedures to civil detainees, the deprivation of civil detainees' constitutional and statutory rights, and the unlawful searches of civil detainees. On October 4, 2012, defendants filed a motion to dismiss for failure to state a claim upon which relief may be granted, to which plaintiff responded.

On March 18, 2013, plaintiff was committed to the custody of the United States Attorney General as a sexually dangerous person pursuant to 18 U.S.C. § 4248(d).[2] United States v. Cooke, No. 5:09-HC-2034-FL (E.D.N.C. Mar. 18, 2013). Plaintiff remains in the BOP's Maryland unit.

**DISCUSSION**

A.   Standard of Review

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

---

[2] Plaintiff was a civil detainee at the time his complaint was filed. Because plaintiff was at detainee at the time he filed his complaint and because he has not amended his complaint to include any allegations as to his status as a civil committee, plaintiff is considered a civil detainee for the purposes of analyzing his constitutional claims.

2

In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, this plausibility standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (citations omitted).

B.  Analysis

Plaintiff alleges that his conditions of confinement violate his constitutional rights. A civil detainee's challenge to conditions of confinement arises under the Due Process Clause of the Fifth Amendment to the United States Constitution. Hicks v. James, 255 F. App'x 744, 748 (4th Cir. Nov. 28, 2007). The Fifth Amendment generally prohibits civilly committed persons from being subjected to punitive confinement conditions. See Youngberg v. Romeo, 457 U.S. 307, 321-322 (1982); Bell v. Wolfish, 441 U.S. 520, 535-536 (1979). To establish a conditions of confinement claim pursuant to the Fifth Amendment, a civil detainee must show either (1) an expressed intent to punish; or (2) lack of a reasonable relationship to a legitimate non-punitive governmental objective, from which a punitive intent may be inferred. Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988).

In determining whether challenged conditions constitute punishment, the legal standard employed for civil detainees under the Due Process Clause is largely the same as that used in analyzing prisoner's claims pursuant to the Eighth Amendment to the United States Constitution.

3

Hicks, 255 F. App'x at 748. "In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991)). The Supreme Court has explained that the first prong is an objective one–the prisoner must show that "the deprivation of [a] basic human need was objectively 'sufficiently serious' "–and the second prong is subjective–the prisoner must show that "subjectively 'the officials act[ed] with a sufficiently culpable state of mind.' " See Strickler, 989 F.2d at 1379 (quotations omitted).

Beginning with the objective prong of the Eighth Amendment test, "for prison conditions to rise to the level of unconstitutional punishment, there must be [objective] evidence of a serious medical and emotional deterioration attributable to the challenged condition." Id. at 1380. If a plaintiff satisfies the objective prong of the Eighth Amendment test, the court must consider the second prong of the Eighth Amendment test–whether defendant acted with deliberate indifference. "Deliberate indifference entails something more than mere negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." See Farmer v. Brennan, 511 U.S. 825, 835 (1994). It requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm. Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995).

1.   More Restrictive Conditions of Civil Detainees

Plaintiff contends that civil detainees are subject to more restrictive conditions of confinement than sentenced inmates. As part of his claim, plaintiff challenges his placement in the

4

Commitment and Treatment Program ("CTP"), a behavior modification program, prior to any adjudication of the commitment petition against him. This claim, however, is foreclosed by United States v. Timms, 664 F.3d 436 (4th Cir. 2012), in which the Fourth Circuit Court of Appeals found no due process violation for detention of a person, pending a civil commitment hearing, who has been certified as sexually dangerous. Id. at 449-450 (finding § 4248 does not deprive detainees of equal protection and that the delay between a detainees § 4248 certification and commitment hearing does not violate due process), cert. denied, 133 S. Ct. 189 (2012); see , United States v. Wooden, 693 F. 3d 440, 451 (4th Cir. 2012).

Additionally, plaintiff fails to provide any facts to support a finding that his confinement in the CTP and/or compelled participation in the program's behavior modification program is punitive. Thus, the court dismisses these claims. See, e.g., Allison v. Snyder, 332 F.3d 1076, 1079-1080 (7th Cir. 2003) (holding the placement of persons civilly confined under the Illinois Sexually Dangerous Persons Act in sex offender group therapy program did not violate due process).

Plaintiff also asserts that he does not have the same access to education or vocational programs as convicted inmates.[3] As a civil detainee, plaintiff has no constitutional right to educational, vocational, or rehabilitative programs. See, e.g., McKune v. Lile, 536 U.S. 24, 38-40 (2002); see Turner v. Federal Bureau of Prisons, No. 5:11-CT-3177-D, 2013 WL 1700937, at *4 (E.D.N.C. Apr. 18, 2013) ("Turner has no constitutional right to the opportunity to participate in vocational, educational, recreational, and rehabilitative programs); Sims v. Lexington County

---

[3] Plaintiff alleges that he refused to participate in counseling upon the advice of his counsel, and not due to any alleged deliberate indifference of any defendant. Thus, to the extent plaintiff alleges he was denied counseling, he fails to state a Fourteenth Amendment claim. Compl. Attach. p. 4. Farmer, 511 U.S. at 837 (Deliberate Indifference requires that a prison official "know [] of and disregard [] an excessive risk to inmate health or safety . . . .").

5

Detention Center, No. 3:06-3490-PMD, 2008 WL 216345, at *5 (D.S.C. Jan. 24, 2008) (citing Beck v. Lynaugh, 842 F.2d 759, 762 (5th Cir. 1998)); Burch v. Jordan, No. 07-3236, 2010 WL 5391569, at *22 (D. Kan. Dec. 22, 2010) (holding that "[p]articipation in a vocational training program while involuntarily confined [under the Kansas Sexually Violent Predator Act] is a privilege, not a right guaranteed by the federal constitution."), aff'd, 444 F. App'x 236 (4th Cir. Sept. 22, 2011); Young v. Monahan, No. 06-C 1193, 2008 WL 182244, at *4 (N.D. Ill. Jan. 16, 2008) (holding civil detainees under the Illinois Sexually Violent Person Act had no constitutional right to vocational or educational programs). Thus, plaintiff fails to state a claim upon which relief may be granted.

Finally, plaintiff alleges that convicted inmates enjoy more favorable access to recreation time and facilities in that they have access to the recreation facility from 6:00 a.m. until 8:30 p.m. daily, whereas, plaintiff's access is limited to 10:45 a.m. until 12:00 p.m. daily, and one evening per week. Compl. p. 6. Plaintiff is not constitutionally entitled to the same access to prison amenities as inmates. Turner, 2013 WL 1700937, at *4. Rather, plaintiff is entitled to conditions that do not "amount to punishment." Id. (citing Bell, 441 U.S. at 535). Here, plaintiff has not alleged that he was denied all opportunities for recreation, only that he was allowed access to recreation on a different schedule from convicted inmates. Id.; cf. Rainwater v. McGinniss, No. 2:10-cv-1727GGH P, 2012 WL 3276966, at *11-12 (E.D. Cal. Aug. 9, 2012); Creveling v. Johnson, Civil Action No. 11-667(SDW), 2011 WL 3444092, at *5-6 (D.N.J. Aug. 4, 2011). Thus, plaintiff has failed to state a claim upon which relief may be granted.

To the extent plaintiff alleges a constitutional claim, arising out of his access to the recreation facility, plaintiff has failed to provide facts sufficient to support such a claim. Plaintiff alleges in his complaint that there is no place for him to go on the recreation yard when there is inclement

6

weather. However, plaintiff later states that "there is not even a paved track for Plaintiff to use and his wheelchair cannot access the area safely." Compl. Attach. p.4. These elusive allegations suggest that plaintiff does in fact have access to the recreation yard, albeit somewhat limited access. Plaintiff has not stated that he suffered any injury based upon his limited access to outdoor recreation. Thus, the court DISMISSES this claim without prejudice finding that it lacks sufficient factual support to proceed. See White v. White, 886 F.2d 721, 723 (4th Cir. 1989) (finding that there is a minimum level of factual support required to state a constitutional claim).

    2.    Commingling with Sentenced Inmates

Plaintiff alleges that his Fifth Amendment rights were violated due to incidental daily contact with sentenced inmates who have "taunted and harassed" the civil detainees calling them "baby rapers" and "child molesters." Compl. Attach. p. 3. Plaintiff additionally challenges the BOP's practice of allowing convicted prisoners to deliver food to the Maryland unit, cut civil detainees' hair, commingling while waiting for medical treatment, and commingling at meal time. Plaintiff further states that the BOP staff offices are located in the Maryland unit, and that convicted inmates must go to the Maryland unit to visit staff offices.

As other courts have held, the practice of housing civil detainees with convicted inmates does not, by itself, violate a civil detainee's constitutional rights. See, e.g., Silvera v. Connecticut Dept. of Corr., 726 F. Supp.2d 183, 195-96 (D. Conn. May 27, 2010) (finding that housing pretrial detainees with sentenced inmates, alone, does not violate the detainee's constitutional rights); Young v. Monahan, No. 07-C-1193, 2008 WL 182244, at *2-3 (N.D. Ill. Jan. 16, 2008) (dismissing for failure to state a claim challenge to "co-mingling" of detainees and persons committed as sexually violent persons); Burciaga v. County of Lenawee, 123 F. Supp. 2d 1076, 1078-79 (E.D. Mich. 2000)

7

(holding "unless the state acts with the impermissible intent to punish a pre-trial detainee or is deliberately indifferent to a pre-trial detainee's safety, it does not violate the due process clause to house that pre-trial detainee with a sentenced inmate.") In this case, plaintiff does not allege sufficient facts to demonstrate more than speculation about a possible risk of future harm due to his status as a § 4248 civil detainee. Although he made the general allegation that he was threatened by convicted inmates, he provided no details or dates as to when the alleged threats occurred or whether any defendant was made aware of the specific threat. The court finds that these facts are insufficient to state an Eighth Amendment claim. See White, 886 F.2d at 723. For the reasons sets forth herein, plaintiff's challenge resting on the commingling of civil detainees and sentenced inmates in the various instances described, cannot survive defendants' motion to dismiss.

  3.  Application of BOP Policies to Civil Detainees

Plaintiff contests the fact that he is subject to the exact same conditions of confinement as federal inmates serving a criminal sentence, including being forced to use the prison commissary for purchases. Generally, "placement [of a civil detainee] in a prison, subject to the institution's usual rules of conduct, [does not per se] signify punishment . . . ." See Allison, 332 F.3d at 1079, see Lucas v. Rivera, No. 2:08-3373-HFF-RSC, 2009 WL 902355, at *2 (D.S.C. Mar. 31, 2009) (holding that a prisoner "has no right protected by the constitution to buy items at the lowest price possible") (footnote omitted).

Here, plaintiff has not asserted how the general application of BOP policies, including those regulating commissary purchases is punitive. See Allison, 332 F.3d at 1079 (finding that civil detainees detained as sexually dangerous persons may be subjected to the ordinary conditions of confinement). Thus, defendants' motion to dismiss is GRANTED as to this claim.

8

In addition to the above-stated policy, plaintiff asserts that his due process rights are violated because he is subject to the same disciplinary procedures as convicted inmates. However, civil detainees are subject to the same security policies as those used at correctional facilities. See Allison, 332 F.3d at 1079 ("If pretrial detainees may be subjected to the ordinary conditions of confinement, as [Bell v. Wolfish, 441 U.S. 520 (1979)] holds, then so may persons detained as sexually dangerous persons."). Thus, plaintiff fails to state a claim upon which relief may be granted.

On a related note, plaintiff requests that the court order prison officials to stop confining detainees in solitary confinement. Although the Fourth Circuit Court of Appeals has not addressed the issue, the Third Circuit Court of Appeals has determined that the placement in segregation of a person civilly committed pursuant to a state Sexually Violent Predator Act does not violate the Due Process clause unless the deprivation is in some way extreme. Deavers v. Santiago, 243 F. App'x 719, 721 (3d Cir. 2007); Cruz v. Main, No. 10-5605 (SDW), 2011 WL 3625068, at *5 (D.N.J. Aug. 15, 2011). Plaintiff has not alleged any extreme deprivation. Moreover, plaintiff has not alleged that he, himself, was placed in disciplinary segregation. Rather, he simply challenges the fact that other detainees have been placed in solitary confinement, which is not sufficient to state a claim upon which relief may be granted.

For the reasons stated, plaintiff's claims of or relating to the application of the BOP's policies and procedures to civil detainees, are DISMISSED for failure to state a claim upon which relief may be granted.

4. Deprivation of Constitutional and Statutory Rights

Plaintiff asserts that the BOP deprived him of his constitutional right to vote. Prior to his certification pursuant to § 4248, plaintiff was convicted of one count of possession of child pornography and two counts of receipt of child pornography. United States v. Cooke, 5:09-HC-2034-FL-JG (E.D.N.C.) (DE # 133, p. 6.) The United States Supreme Court in Richardson v. Ramirez, 418 U.S. 24 (1974), allowed for the disenfranchisement of persons convicted of a crime, including persons who have completed their sentences and parolees. Id. at 56; see also, See Cranford v. Taylor, No. 1:07-CV-01136-BLW-LMB, 2010 WL 682502, at *3, n. 3 (E.D. Ca. Feb. 24, 2010). Accordingly, because plaintiff previously was convicted of a felony and because felon disenfranchisement is permissible, plaintiff fails to state a claim upon which relief may be granted.

Plaintiff also asserts that he is entitled to receive minimum wage pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-209 for work performed during his civil detention. However, the FLSA's minimum wage provisions apply only to workers who are "employees" within the meaning of the Act. See 29 U.S.C. § 206(a). The FSLA does not apply to convicted inmates. Harker v. State Use Industries, 990 F.2d 131, 133 (4th Cir. 1993). Further, the courts that have considered the issue have held that the FSLA does not apply to detainees. See Tourscher v. McCullough, 184 F.3d 236, 243-244 (3d Cir. 1999) (citing Villarreal v. Woodham, 113 F.3d 202, 206-207 (11th Cir. 1997)). Because the FSLA does not apply to detainees, plaintiff fails to state a claim upon which relief may be granted.[4] Thus, this claim also is DISMISSED.

---

[4] The court notes that plaintiff makes the blanket assertion in response to defendants' motion to dismiss that his access to religious services is more restricted than convicted inmates. Plaintiff, however, has provided no factual support for this claim. Thus, this claim is DISMISSED without prejudice. See White, 886 F.2d at 723.

Case 5:11-ct-03260-FL   Document 20   Filed 08/21/13   Page 10 of 14

5. Unlawful Searches

Plaintiff contests the BOP's policy of requiring civil detainees to submit their mail unsealed. Civil detainees have a First Amendment right of free speech and to send and receive mail. Hudson v. Palmer, 468 U.S. 517, 547 (1984). "The fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment." Jones v. North Carolina Prisoners' Union, 433 U.S. 119, 125 (1977). Restrictions on an inmate's constitutional rights are valid "if [they are] reasonably related to legitimate penological interests." Turner v. Safely, 482 U.S. 78, 89 (1987).

BOP policy provides that "outgoing mail from a pretrial inmate may not be sealed by the inmate and may be inspected by staff." 28 C.F.R. § 540.14(b). This policy is intended "to provide for the continued efficient and secure operation of the institution and to protect the public." 61 Fed. Reg. 64954-01. The BOP applies this policy to civil detainees because they pose a certain degree of flight risk, and "the unsettled nature of their status may lead to misuse of the correspondence privilege." Id. The court finds that the BOP's policy regarding outgoing mail is reasonably related to legitimate penological interests. See Smith v. Delo, 995 F.2d 827, 830-831 (8th Cir. 1993) (policy requiring non-privileged mail to be unsealed so that it could be inspected for contraband and proper addressing did not violate the constitution); see, e.g., Weatherspoon v. Ferguson, 398 F. App'x 7, at *2 (5th Cir. 2010); Brown v. Hedrich, No. 10-CV-1089, 2012 WL 1995126, at *6 (E.D. Wis. May 31, 2012). Thus, the court finds that plaintiff failed to state a claim upon which relief may be granted.

To the extent plaintiff asserts that his constitutional rights are being violated because he does not have access to an email account, in the civil commitment context, court have upheld institutional

11

rules concerning restrictions on electronic access. Turner, 2013 WL 1700937, at *4 (citing Rivera v. Rogers, 224 F. App'x 148, 151 (3d Cir. 2007) (per curiam)); Spicer v. Richards, No. C07-5109 FDB, 2008 WL 3540182, at *7-8 (W.D. Wash. Aug. 11, 2008)). Thus, defendants' motion to dismiss this claim is GRANTED.

The court next addresses plaintiff's challenge to the fact that BOP staff removed his Pre-Sentence Investigation Report ("PSR") from his legal mail. BOP policy prohibits an inmate from receiving a copy of his PSR in the mail. BOP Program Statement 1351.05, p. 15. BOP maintains this policy "[f]or safety and security reasons, including the following: Many PSRs [] contain information regarding the inmates' government assistance, financial resources, community affiliations, etc. The [BOP] has documented an emerging problem where inmates pressure other inmates for a copy of their PSRs [] to learn if they are informants, gang members, have financial resources, etc." United States v. Truesdale, No. 3:92cr34, 2010 WL 3522266, at *2 (W.D.N.C. Sept. 7, 2010) (citing Keys v. Department of Homeland Security, 570 F. Supp. 2d 59, 71 (D.D.C. 2008)), aff'd, 415 F. App'x 468 (4th Cir. Mar. 8, 2011). The court finds that this policy is reasonably related to legitimate penological interests.[5] Thus, plaintiff fails to state a claim upon which relief may be granted.

In addition to his mail-related claims, which were DISMISSED for reasons noted above, plaintiff alleges that he has been subjected to "mass shakedowns" as a form of punishment. Compl. Attach. p. In support, plaintiff alleges that "these searches are not for prison contraband, but for items that general population inmates still serving their sentences are allowed, such as 'Maxim'

---

[5] The court notes that this court's Standing Order 11-SO-4, ¶ 11(f)(ii), allows detainees access to their PSR through their Adam Walsh Act attorneys.

12

magazine, photos of ADULT models dressed in swimming attire, and even family photos if there are any children in them." Id. This evidence is then turned over to the United States Attorney to be used against § 4248 detainees in their § 4248 proceedings. Id.

Although plaintiff states that he was subject to "mass shakedowns," he does not describe any search specific to him, any alleged injury, or the defendant that allegedly conducted the search. Thus, plaintiff fails to state a claim upon which relief may be granted. See, e.g., Turner, 2013 WL 1700937, at *4.

To the extent plaintiff generally challenges searches for erotic material, such as Maxim magazine and adult models dressed in swimming attire, "[a]ny magazines or publications that contain material describing or depicting sexual or erotic material, pornography, violence, rape, nude women, men, and children, or depictions of men, women, or children in suggestive situations, or pictures of children in general, may be proscribed" by a sex offender treatment program "due to legitimate treatment interest." Gilmore v. Kansas, No. 03-3222-JAR, 2004 WL 2203458, at *5 (D. Kan. Sept. 27, 2004). Thus, plaintiff failed to state a claim upon which relief may be granted.

6.   Improper Transfer

Plaintiff challenges his transfer from the Federal Medical Center in Rochester, Minnesota to Butner, arguing that the transfer delayed his § 4248 hearing. First, an inmate has no right to choose his place of incarceration. See Meachum v. Fanno, 427 U.S. 215, 225 (1976); Johnson v. Ozmint, 456 F. Supp.2d 688, 695 (D.S.C. 2006) (citing Ajaj v. Smith, 108 F. App'x 743, 744 (4th Cir. 2004) (per curiam)). Further, the Fourth Circuit Court of Appeals has determined that a civil detainee's due process rights are not violated by the delay between certifying a civil detainee as a

13

sexually dangerous person and holding the civil commitment hearing.  Timms, 664 F.3d at 454-455;

United States v. Arrington, 493 F. App'x 474, 475 (4th Cir. 2012).[6]

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss (DE 13) is GRANTED, and the action is DISMISSED without prejudice.  The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this 21st day of August, 2013.

_____
LOUISE W. FLANAGAN
United States District Judge

---

[6] To the extent plaintiff asserts that he experienced pain during his transfer from Minnesota to North Carolina, he fails to state an Fourteenth Amendment claim because he did not allege that any defendant had knowledge of his alleged pain and acted with deliberate indifference.  See Watson v. Brown, 446 F. App'x 643, 645 (4th Cir. Sept. 11, 2011) ("For a claimant to prevail on [an Eighth Amendment] claim, the need must be both apparent and serious, and the denial of attention must be both deliberate and without legitimate penological objective.") (internal quotation omitted).